**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| In re: | * | |
| **DAWN CRIKET ALEXANDER** | * | **Case No. 21-13896-DER** |
| **Debtor** | * | **(Chapter 7)** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **SNOWDEN INVESTORS LLC** | * | |
| **7200 Wisconsin Avenue, Suite 700** | | |
| **Bethesda, MD 20814** | * | |
| **Plaintiff** | * | |
| **v.** | * | **Adversary No:_____** |
| **DAWN CRIKET ALEXANDER** | * | |
| **5108 Brady Court** | | |
| **Ellicott City, MD 21043** | * | |
| **Defendant** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT OBJECTING TO DISCHARGE OF DEBTOR**

Snowden Investors LLC (the "Plaintiff"), by and through its undersigned counsel, pursuant to Rules 4004 and 7001(4) of the Federal Rules of Bankruptcy Procedure[1] and Section 727 of Title 11 of the United State Code[2], hereby files this *Complaint Objecting to Discharge of Debtor*, and in support thereof states as follows:

---

[1] The "Bankruptcy Rules."

[2] The "Bankruptcy Code."

5361905.1

## Consent to Entry of Final Orders and Judgments

1.      Pursuant to Bankruptcy Rule 7008 and Local Bankruptcy Rule 7012-1, the Plaintiff hereby consents to the entry of final orders and judgments by the Judges of the United States Bankruptcy Court for the District of Maryland.

## Jurisdiction

2.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and Local Rule 402 of the United States District Court for the District of Maryland.  Venue of this proceeding is proper in this judicial district pursuant to 28 U.S.C. § 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

## Facts

3.      Plaintiff is a creditor of Defendant Dawn Criket Alexander (the "Debtor"), with Plaintiff having filed a proof of claim [Claim 10] asserting a liability of $1,037,559.50 owed by the Debtor based on her personal guaranty of a commercial lease.

4.      On June 11, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, commencing Case No. 21-13896-DER.

5.      The Debtor's case was filed on the same day as the Chapter 11 filing of the Debtor's business, Algits Incorporated ("Algits"), Case No. 21-13888-DER.

6.      The Debtor's case was also followed by the Chapter 7 filing of the Debtor's spouse, April Michelle Alexander-Giles (the "Debtor's Spouse"), on October 27, 2021, Case No. 21-16774-NVA.

7.      Upon information and belief, the Debtor has been the sole owner of Algits since January 2020, when the corporation purchased a majority ownership interest from the Debtor's Spouse.

8.　　Upon information and belief, both the Debtor and the Debtor's Spouse managed the operations and financial affairs of the Algits corporation from 2017 until it ceased operations in September 2021, with both the Debtor and the Debtor's Spouse having received regular income from the business.

9.　　Despite the initial creditors meeting on July 12, 2021 lasting for approximately forty-five minutes, the Debtor's testimony was very evasive and several errors or omissions in the Debtor's filings were discovered, causing the Chapter 7 Trustee to continue the meeting.

10.　　Included among the omissions discovered at the initial creditors meeting were:

　　a.　Land owned by the Debtor in West Virginia;

　　b.　The Debtor's marital property interest in the property at 11358 Barley Field Way, Marriottsville, MD (the "Barley Field Way Property") ;

　　c.　The Debtor's sale of real property in Washington, D.C. just nine months before the Petition Date with the Debtor receiving net proceeds of $55,000; and

　　d.　A timeshare at the Coconut Beach Resort.

11.　　The continued meeting was conducted on July 26, 2021 and despite the Chapter 7 Trustee's instructions to the Debtor to further amend certain filings, the Debtor failed to do so.

12.　　Rather, the only amendment filed by the Debtor since the second creditors meeting was her Amended Schedule H, which was filed more than nine (9) months later and, notably, was not one of the amendment directed by the Chapter 7 Trustee.

13.　　Upon information and belief, the Debtor filed the Amended Schedule H, changing the address of the Debtor's Spouse as an identified co-debtor, in order to assist the Debtor's Spouse in defending the discharge objection complaint pending against her in Adversary Proceeding No. 22-00071-NVA and/or limit the grounds for this action against the Debtor.

14.     Upon the multiple requests of the Chapter 7 Trustee, the Court extended the deadline to file an objection to the Debtor's discharge until May 13, 2022 [ECF 59].

<u>Concealed Income in 2019, 2020, and 2021</u>

15.     Upon information and belief, the Debtor rented her property at 5108 Brady Court, Columbia, MD (the "<u>Brady Court Property</u>") to Ike and Stella Okoye for approximately $3,600 per month from at least November 2019 through at least September 2021 (after the Petition Date).

16.     That rental income was not disclosed on the Debtor's Schedule I, which, notably, was one of the Schedules that the Trustee instructed the Debtor to amend to include the income of the Debtor's Spouse.

17.     That rental income was also not disclosed in the Debtor's response to Item 4 on her Statement of Financial Affairs [ECF 1 and 30] which called for the disclosure of the Debtor's income for the past two years.

18.     And, that rental income and the occupancy of the property by tenants was not disclosed in the Debtor's testimony at the creditors' meetings.

19.     The Debtor's Spouse testified that there were never renters at the Brady Court Property and that she had never heard of Stella Okoye; which, if true, leaves only the Debtor to possibly act as owner-landlord of the Brady Court Property, despite the Debtor's failure to disclose any such income or lease interests in her sworn statements.

<u>Concealment or Failure to Explain Loss of Assets</u>

20.     The Debtor's business, Algits, operated under the tradename "NinjaBe."

21.     Upon information and belief, the rental income noted in Paragraphs 15-18, *supra*, was deposited into a bank account titled to NinjaBe Holdings, LLC, with both the Debtor and the Debtor's Spouse being signatories on such account.

22.    The NinjaBe Holdings, LLC bank account and statements were uncovered by the subpoena efforts of the Chapter 7 Trustee in the case of the Debtor's Spouse, who otherwise refused to identify the account or produce information to the Chapter 7 Trustee.

23.    NinjaBe Holdings, LLC is registered with the Maryland Department of Assessment & Taxation as a foreign entity originally formed in Wyoming, with Kline Law Group LLC having filed the registration and Robert Kline, III identified as the company's registered agent in Maryland.

24.    Mr. Kline and Kline Law Group represent the Debtor in her Chapter 7 proceeding.

25.    Mr. Kline and Kline Law Group also represent Algits in its Chapter 11 proceeding.

26.    Recorded among the land records for Howard County at Book 18844, page 66 is a Mortgage in favor of NinjaBe Holdings, LLC, serving as a lien against the Barley Field Way Property identified *supra*, at paragraph 10, which was acquired by the Debtor's Spouse while she was married to the Debtor in June 2019.

27.    The Mortgage in favor of NinjaBe Holdings, LLC against the Barley Field Way Property is in the stated amount of $250,000.

28.    The Debtor's Spouse testified during the creditors meeting in her separate Chapter 7 case that she did not receive the $250,000 that the Mortgage states was loaned to her by NinjaBe Holdings, LLC and, furthermore, that the Mortgage was created for the purpose of protecting the Barley Field Way Property.

29.    Despite the apparent connection between the Debtor, her spouse, and NinjaBe Holdings, the Debtor's Spouse was unable to explain the details of this entity and why it purports to have loaned the $250,000 that the Debtor's Spouse says she never received.

30.     The Debtor's Spouse failed to identify Ninjabe Holdings, LLC as a creditor on her filed Schedules.

31.     The Debtor also failed to identify NinjaBe Holdings, LLC as a creditor on her filed Schedules.

32.     However, like the Mortgage against the Barley Field Way Property, there is also recorded among the land records for Howard County at Book 18945, page 139 a Mortgage in favor of NinjaBe Holdings, LLC, serving as a lien against the Debtor's Brady Court Property identified *supra*, at Paragraph 15.

33.     The Mortgage in favor of NinjaBe Holdings, LLC against the Brady Court Property is in the stated amount of $225,000 and purports to have been executed by the Debtor before a notary public on September 12, 2019, within two years of the Petition Date.

34.     Given the Debtor's failure to disclose any such liability on her Schedules or any such transfer of an interest in property on her Statement of Financial Affairs, the Mortgages in favor of NinjaBe Holdings, LLC against the Barley Field Way Property and the Brady Court Property appear to be shams.

35.     In addition to NinjaBe Holdings, LLC, there is also (i) NinjaBe Commercial Ventures LLC and (ii) NinjaBe Construction Partners LLC, both being registered Maryland entities for which Articles of Organization were filed by Debtor's counsel, with Mr. Kline also being identified as resident agent for the entities.

36.     Upon information and belief, there is also a Delaware entity known as NinjaBe Franchise Ventures, LLC  also formed by Debtor's counsel.

37.     The Debtor's Spouse denied any connection to these other "NinjaBe" entities.

38.     The Debtor identified only Algits as a business in which she has any ownership on her Amended Scheduled AB, item 19 [ECF 33].

39.     The Debtor's Statement of Financial Affairs, item 27 [ECF 1 and 30] – that is, one of the filings that the Debtor failed to amend despite the Chapter 7 Trustee's instruction – contained no disclosure of any business ownership interests or connections by the Debtor, despite what is known as far as the Debtor's ownership of Algits, her signatory status to the NinjaBe Holdings, LLC bank account, and what is presumed to be some control or interest of the Debtor in the other "NinjaBe" entities formed by her counsel.

<u>Concealed Transfers of Assets Between the Debtor, Her Spouse, and Their Businesses</u>

40.     Upon information and belief, in July 2018 funds in the amount of $489,762.39 due to Algits were deposited into the same account of NinjaBe Holdings, LLC identified *supra*, at Paragraph 21-22.

41.     Upon information and belief, $450,000 was transferred from the same NinjaBe Holdings, LLC account by way of a certified check payable to the Debtor's Spouse in November 2018.

42.     Upon information and belief, the Debtor and the Debtor's Spouse made significant payments outside of ordinary course in 2019, including:

  a.  A down payment of at least $60,000 when the Barley Field Way Property was purchased in June 2019; and

  b.  Payments totaling approximately $100,000 to Robert Gramlich for construction/renovation work on the Barley Field Way Property in 2019.

43.     Thus, it appears the Debtor has concealed or failed to keep information as to unknown income and large expenditures.

44.     Furthermore, a subpoena issued in the Algits case seeking its bank records, including from 2019 – which would have presumably would have disclosed any extraordinary or inappropriate transfers to or for the benefit of the Debtor – was met with a motion for temporary restraining order to prevent the bank's disclosure.

45.     As Algits had already ceased operating and presumably had nothing to hide when the subpoena was issued, the apparent purpose of the restraining order was to prevent the disclosure of questionable financial transactions by the Debtor and the Debtor's Spouse.

<u>Inconsistencies and Misrepresentations as to Real Estate</u>

46.     The Debtor's Spouse stated her residence to be at 11358 Barley Field Way property as of her Chapter 7 filing in October 2021, and that she had not resided at the 5108 Brady Court property since 2019.

47.     However, both the Debtor and Algits listed the Brady Court Property as the address for the Debtor's Spouse on their bankruptcy schedules filed just four months earlier in July 2021.

48.     Upon information and belief, the Brady Court Property is now vacant and previously occupied by tenants as discussed *supra*, at Paragraph 15.

49.     Notably, the inconsistent statements by the Debtor and the Debtor's Spouse as to their residences result in them both claiming homestead exemptions on different properties.

50.     Furthermore, between the Barley Field Way Property and the Brady Court Property, the Debtor's valuations were more than $340,000 greater than the valuations asserted by the Debtor's Spouse for the properties just four months later, and that is in the midst of an extraordinarily heightened market.

Transfers/Concealments/Failures to Explain in Connection with Insiders' Cases

51.     Both the Debtor's Spouse and Algits are insiders, as that term is defined under Section 101 of the Bankruptcy Code, either by way of their connection to the Debtor failing within one of the enumerated categories, or otherwise based on the facts and circumstances of their relationship with the Debtor.

52.     The Debtor has acted as the representative for Algits throughout its Chapter 11 proceeding.

53.     Unfortunately, the testimony of the Debtor at the creditors' meetings in the Algits Chapter 11 proceeding was littered with vague and evasive responses.

54.     Just months prior to its Chapter 11 filing, Algits, by and through the  Debtor, obtained an Emergency Relief Fund Loan in the amount of $200,000 from the Maryland Small Business Development Financing Authority.

55.     The terms of that emergency loan required that $180,000 of the loan proceeds "shall" be used to pay delinquent rent to Algits' landlord.

56.     Despite having more than three months to do as required under the emergency loan, Algits paid only $26,630.25 towards delinquent rent.

57.     After the commencement of the Chapter 11 proceeding, Algits, by and through the Debtor, failed to comply with the statutory obligation to pay rent that came due after the Petition Date, despite the record in the Algits case clearly establishing that there was sufficient cash on hand to make the rent payments.

58.     Having not made any post-petition payments to its landlord, Algits went on to request *post hoc* approval of an unauthorized transfer of all cash funds Algits had remaining (including those directly traceable to the emergency loan that was required to be paid toward

delinquent rent) and the use of those funds as a setoff against debt owed to Eagle Bank, which was of course cross-collateralized by the Debtor's real estate; thereby leaving no funds available for the Algits unsecured creditors – despite Eagle Bank clearly having not been secured by the funds.

59.     Thus, after intentionally not complying with the express conditions upon which the Debtor obtained any emergency government loan for her business, then failing to comply with mandatory requirements under the Bankruptcy Code, the Debtor transferred funds without the requisite court authorization for the seeming purpose of satisfying secured debt against the Debtor's personal assets, rather than paying the creditor for whom such funds were designated.

60.     The wrongful purpose of that conduct in the Algits case, by and through the Debtor as its sole owner, is magnified by not only the Debtor's statements in her filings and testimony, but also the other circumstances in the Algits case.

61.     First, there was a motion for a sale of the Algits assets to a buyer who presented a fraudulent check for closing, with the Debtor having directly secured that purchase offer.

62.     That fraud was followed by an auction sale of Algits' assets conducted by the Debtor without any authorization or notice, forcing the Subchapter V Trustee to pull together *post hac* approval and completion of the sale.

63.     Furthermore, there are questionable transfers by Algits that appear to be to or for the benefit of the Debtor, after the business ceased operations in September 2021.

64.     Despite Algits closing its doors and selling its assets in the middle of September, the business somehow exceeded its cash collateral budget for the month by more than $30,000, including payments that appear to be to or for the benefit of the Debtor by way of payroll and payment of debts for which the Debtor also has liability.

65.     And, it was only upon the inquiry of Plaintiff, that Algits ultimately disclosed its ownership of intellectual property for the first time in its amended Chapter 11 Plan (after failing to disclose such in the Schedules executed by the Debtor), and, conveniently, Algits now proposes to sell that intellectual property to the Debtor for the nominal sum of $100.

66.     Based on the foregoing, the Plaintiff avers that there is other intentional conduct by the Debtor hindering her creditors or bankruptcy estate, and material errors and omissions in the Debtor's filed Schedules and Statement of Financial Affairs, as well as within her testimony at her creditors meetings and in the Algits case, that will be discovered if the Debtor is forced to fully and accurately disclose her assets, financial condition, and business transactions.

### Objection to Discharge

67.     Section 727(c)(1) of the Bankruptcy Code provides that "a creditor … may object to the granting of a discharge under subsection (a) of this section."

68.     Among the enumerated grounds set forth in Section 727(a) for denying a debtor's discharge are:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>> (B) property of the estate, after the date of the filing of the petition;
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>> (A) made a false oath or account;
>> (B) presented or used a false claim;

5361905.1

11

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5 ) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

…

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;

69.    Based on the facts averred, and those to be discovered, the Plaintiff submits that each of the above-referenced grounds for denial of discharge are applicable to the Debtor's proceeding.

70.    Accordingly, the Plaintiff requests denial of the Debtor's prospective discharge.

WHEREFORE, Plaintiff, Snowden Investors LLC, respectfully requests that this Court enter an order denying the discharge of the Defendant, Dawn Cricket Alexander, and granting such other and further relief as is just and equitable.

Dated:  May 12, 2022              /s/ Joseph M. Selba
                                 Joseph M. Selba, Bar No. 29181
                                 Tydings & Rosenberg, LLP
                                 1 E. Pratt Street, Suite 901
                                 Baltimore, MD 21202
                                 (410) 752-9753
                                 jselba@tydingslaw.com
                                 *Attorneys for Plaintiff*